# UNITED STATES OF AMERICA *v.* UNION MANU-FACTURING COMPANY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF FLORIDA.

No. 628.  Argued February 28, 1916.—Decided April 3, 1916.

The offense of false billing and representations specified in the third paragraph of § 10 of the Act to Regulate Commerce as amended June 18, 1910, c. 309, 36 Stat. 549, applies to consignees as well

as to consignors of interstate shipments; and where, as in this case, false representations are made by the consignee in liquidation of the amount payable for freight at destination, the offense is wholly or in part committed at that place and the District Court of that district has jurisdiction of an indictment charging the offense to have been therein committed by the consignee.

The offense under the Act of June 18, 1910, is not analogous to that of obtaining money under false pretenses, but may be committed where the interstate transportation has already been completed and the amount due therefor remains to be adjusted, and with the same effect as though the false representations had preceded the delivery of the goods to the carrier for interstate shipment.

THE facts, which involve the construction of paragraph three of § 10 of the Act to Regulate Commerce as amended June 18, 1910, and the jurisdiction of the District Court of offenses thereunder, are stated in the opinion.

*Mr. Assistant to the Attorney General Todd* for the United States.

*Mr. William G. Brantley* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is a writ of error under the Criminal Appeals Act of March 2, 1907 (ch. 2564; 34 Stat. 1246), to review a judgment of the District Court for the Southern District of Florida sustaining a demurrer to an indictment for fraudulently misrepresenting the weights of certain shipments of lumber, in violation of the third paragraph of § 10 of the Act to Regulate Commerce, as amended June 18, 1910 (ch. 309; 36 Stat. 539, 549).[1]  The demurrer

---

[1] "Any person, corporation, or company, or any agent or officer thereof, who shall deliver property for transportation to any common carrier subject to the provisions of this Act, or for whom, as consignor or consignee, any such carrier shall transport property, who shall knowingly and willfully, directly or indirectly, himself or by employee, agent, officer, or otherwise, by false billing, false classification, false

was sustained upon the ground that the statute, as construed by the Circuit Court of Appeals for the Sixth Circuit in *Davis* v. *United States*, 104 Fed. Rep. 136, requires the prosecution to take place in the District where the goods are billed by the shipper and the delivery for transportation takes place, which in this instance was not in the Southern District of Florida, but in Georgia.

The indictment contains ten counts, charging as many different offenses. They are alike in form, and a summary of the first will suffice. It recites that the South ·Georgia Railway Company was a common carrier by rail engaged in the interstate transportation of yellow pine lumber for hire from Baden, in the State of Georgia, to Greenville, in the Southern District of Florida, and had filed and published schedules and tariffs showing the rate and charge for transportation of such lumber under six inches in thickness in carload lots between those points to be $7 for each carload lot of the weight of 24,000 pounds, excess in proportion; that the schedules and tariffs further provided that when the actual weight of a shipment was not ascertained at point of shipment or at destination or in transit, the freight charges should be based upon an estimated weight of 5,000 pounds for each 1,000 feet; that the Union Manufacturing Company was and is a corporation engaged in shipping said property from Baden to Greenville, and J. T. Prince was its agent,

---

weighing, false representation of the contents of the package or the substance of the property, false report of weight, false statement, or by any other device or means, whether with or without the consent or connivance of the carrier, its agent, or officer, obtain or attempt to obtain transportation for such property at less than the regular rates then established and in force on the line of transportation; . . . shall be deemed guilty of fraud, which is hereby declared to be a misdemeanor, and shall, upon conviction thereof in any court of the United States of competent jurisdiction within the district in which such offense was wholly or in part committed, be subject for each offense to a fine," etc.

having general charge and control of the shipments and
the payment of freight charges therefor; that on a date
specified, and while said schedules and tariffs were in
effect, said Railway Company transported from Baden
to Greenville for the Manufacturing Company a specified
carload of yellow pine lumber under six inches in thick-
ness, and delivered it at Greenville to the Manufacturing
Company; that the actual weight of said carload lot was
not ascertained at Baden, or at Greenville, or in transit;
that the Manufacturing Company thereafter unloaded
the lumber from the car and ascertained the number of
feet thereof; and that the said Company, and Prince
acting as its agent, well knowing the number of feet to
be 9,074, then and there falsely and fraudulently repre-
sented to the Railway Company that the number of feet
was 7,200, in consequence of which the Railway Company
charged and the Union Lumber Company paid for the
transportation of said lumber less than the lawful charge
provided in the schedules and tariffs and at a less rate
than the lawfully established rate.

In our opinion, the court below misapplied the decision
in *Davis* v. *United States,* 104 Fed. Rep. 136. In that
case, which arose under the Act as it stood before the
amendment of 1910 (March 2, 1889, c. 382, 25 Stat. 855;
1 Supp. Rev. Stat. 687), the circumstances were very
different from those now presented. The acts charged
were misrepresentations by false billing and classification
of certain property delivered by defendants to the rail-
way company at Cincinnati, Ohio, for transportation
thence to Dallas, Texas. The contract of carriage was
made at Cincinnati, where defendants resided and carried
on business, and the bill of exceptions showed that every-
thing connected with the shipment of the goods except
the carriage and delivery took place in Cincinnati. The
court said (p. 139): "We think that false billing or other
misrepresentation of the goods as stated in the Act, which

results in their being received by the carrier under a contract of carriage thus fraudulently obtained, is the obtaining of transportation within the meaning of the statute. Then the fraudulent conduct of the shipper has borne its fruit, and every act and intent which constitutes the offense is complete." It was accordingly held that the offense was indictable in the Southern District of Ohio, and not in the Northern District of Texas, within which was the destination of the goods. We are not called upon to either concede or question the propriety of this decision upon the facts that were there presented. General expressions contained in the opinion are of course to be interpreted in the light of those facts. Another case of the same kind is *In re Belknap*, 96 Fed. Rep. 614. These cases are not in point with the present. In each of them the fraud was that of the consignor. Here it is the consignee and its agent against whom fraud is charged. (The fact that the consignee was also the consignor is of no significance, since the fraud alleged was in what it did as consignee.) There the fraud inhered in the making of the contract of carriage; here it had to do with the liquidation of the amount payable for freight at destination.

The Act, by its very terms, applies to consignees as well as to consignors. But as it applies only to interstate transportation, the consignee is normally a resident of a different State, and therefore of a different District, from that where the goods are billed by the shipper and the delivery for transportation takes place. To say, therefore, that the Act contemplates an indictment only in the District where the goods are billed by the shipper is in effect to say that in most cases the consignee either may not be indicted at all or else must be indicted in a District of which he is not a resident, and which in many instances he may never have visited. We hold that the offenses charged in this indictment were "wholly or in

part committed" in the Southern District of Florida. See *United States* v. *Freeman*, 239 U. S. 117.

It is insisted in behalf of defendants in error that since the indictment shows that the transportation had been completed and the lumber delivered to the consignee before the alleged fraudulent representations were made, it cannot be said that the fraud charged amounted to either *obtaining or attempting to obtain transportation for the property* at less than the established rates. If the statute on which the indictment is based were analogous to the familiar acts rendering criminal the obtaining of money or other property by false pretenses, the argument would be cogent. Under such statutes, it is commonly if not universally held to be essential to criminality that the false pretense shall precede the obtaining of the property. *People* v. *Haynes*, 14 Wend. 547, 563, 564; reversing 11 Wend. 557; *State* v. *Church*, 43 Connecticut, 471, 479; *State* v. *Moore*, 111 N. Car. 667, 674; *State* v. *Willard*, 109 Missouri, 242, 247; *Watson* v. *People*, 27 Ill. App. 493, 496.

The statutory provision with which we are dealing has a very different purpose. It is not designed especially to protect the property rights of the carrier, for the offense is made equally punishable whether committed with or without the consent or connivance of the carrier. It originated in the 1889 amendment to the Act to Regulate Commerce (March 2, 1889, c. 382; 25 Stat. 855, 858; 1 Supp. Rev. Stat. 684, 687), and is but one of many provisions enacted by Congress with the object of preventing discriminations and favoritism as between shippers by requiring the publication of tariffs and prohibiting any departure from them. The prohibitions of the original act of February 4, 1887 (c. 104, §§ 2, 3, 6, 10; 24 Stat. 379; 1 Supp. Rev. Stat. 529), were addressed to the carrier alone. The 1889 amendment brought shipper and consignee within the scope of the law, both by enacting that false billing, etc., should be punishable criminally,

and by providing similar punishment for inducing discriminations by the payment of money or other thing of value, solicitation, or otherwise. The June 28, 1910, amendment (c. 309, § 10; 36 Stat. 539, 549), extended the range of the prohibition to certain other fraudulent practices by consignors and consignees committed for like purposes.

In denouncing as criminal "false billing, false classification, false weighing, false representation of the contents of the package or the substance of the property, false report of weight, false statement, or other device or means" employed in order to "obtain or attempt to obtain transportation for such property at less than the regular rates then established," the lawmaker regarded not merely the physical transportation of the property, but the entire transaction through which consignor or consignee might seek to evade the policy of the Act to subject all interstate shipments to uniform rates of charge prescribed in published tariffs. In a case where for any reason the payment of the freight is not made prior to the delivery of the goods to the consignee but remains to be afterwards adjusted, the effort to obtain an advantage not permitted by the schedules may still be exerted through fraudulent representations influencing the adjustment of the freight, with precisely the same effect as if the representations had preceded delivery of the goods. When this is accomplished, there is a fraudulent obtaining of transportation at less than the established rate, within the meaning of the prohibition. Thus it needs only that we interpret the statute according to the plain meaning of the terms employed, in the light of subject-matter and context, in order to conclude, as we do, that the acts set forth in this indictment are punishable criminally under the Act.

*The judgment of the District Court will be reversed, and the cause remanded for further proceedings in conformity with this opinion.*