**McDONNELL et al. v. UNITED STATES.**

Circuit Court of Appeals, First Circuit.
June 16, 1927.

No. 2064.

**1. Conspiracy ⬅47—Evidence held to warrant finding of conspiracy to violate Tariff and Prohibition Acts by transportation of liquor (Tariff Act 1922, § 593 [a] [b], being Comp. St. §§ 5841h12, 5841h13; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution for conspiracy to violate Tariff Act 1922, § 593 (a) (b), being Comp. St. §§ 5841h12, 5841h13, and National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), evidence *held* to warrant finding of conspiracy, joined in by all defendants, to transport liquor by water.

**2. Indictment and information ⬅125(5½)—Indictment charging conspiracy to commit two different offenses is not "duplicitous."**

Indictment charging conspiracy in one count to commit two different offenses against the United States is not bad for duplicity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Duplicity.]

**3. Conspiracy ⬅43(12)—In prosecution for conspiracy to commit offenses against Tariff and Prohibition Acts, proof of offense against either act pursuant to conspiracy was sufficient (Tariff Act of 1922, § 593 [a] [b], being Comp. St. §§ 5841h12, 5841h13; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution for conspiracy to violate Tariff Act 1922, § 593 (a) (b), being Comp. St. §§ 5841h12, 5841h13, and National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), proof of transportation in violation of Prohibition Act, pursuant to conspiracy, was sufficient without proof of importation in violation of Tariff Act.

**4. Conspiracy ⬅48—In prosecution for conspiracy to violate Tariff and Prohibition Acts, question whether there was one conspiracy or several independent conspiracies held for jury (Tariff Act of 1922, § 593 [a] [b], being Comp. St. §§ 5841h12, 5841h13; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution for conspiracy to violate Tariff Act of 1922, § 593 (a) (b), being Comp. St. §§ 5841h12, 5841h13, and National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), evidence *held* for jury on question whether there was one continuing conspiracy, or several distinct conspiracies.

**5. Conspiracy ⬅23—Guilt of conspirator is not dependent on his knowledge of entire scope of conspiracy.**

In prosecution for conspiracy, state need not prove that each person in conspiracy understood its entire scope.

19 F.(2d)—51

**6. Conspiracy ⬅48—Instruction that there was no evidence that defendant possessed whisky in pursuance of conspiracy held properly denied.**

In prosecution for conspiracy to violate Tariff and Prohibition Acts, evidence that 442 bags or cases were landed at house occupied by particular defendant, who was present and claimed that there should be 500 cases, and that "Scotch" was at direction of such defendant stored in coal bin, and "Rye" on the floor, and that such defendant furnished money with which men were paid off, *held* to warrant denial of instruction that there was no evidence that such defendant possessed 442 bags, more or less, of whisky in pursuance of any conspiracy.

**7. Criminal law ⬅304(4)—That "Scotch" and "Rye" are used to indicate kinds of whisky is matter of common knowledge.**

It is common knowledge that the words "Scotch" and "Rye" are used to indicate different kinds of whisky.

**8. Conspiracy ⬅48—In prosecution for conspiracy, requested instruction that there was no evidence that alcohol, whisky, and intoxicating liquor were imported, held properly denied (Tariff Act 1922, § 593 [a] [b], being Comp. St. §§ 5841h12, 5841h13; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution for conspiracy to violate Tariff Act 1922, § 593 (a) and (b), being Comp. St. §§ 5841h12, 5841h13, and National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), instruction that there was no evidence that any alcohol, whisky, or other intoxicating liquor was imported and brought into the United States, *held* properly denied, whether intended to raise question whether importation was shown, or question of character of liquors transported.

**9. Conspiracy ⬅47—Evidence that liquors landed in secrecy of night were intoxicating and fit for beverage held unnecessary. Tariff Act 1922, § 593. [a] [b], being Comp. St. §§ 5841h12, 5841h13; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution for conspiracy to violate Tariff Act 1922, § 593 (a) (b), being Comp. St. §§ 5841h12, 5841h13, and National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa) evidence that liquors landed on several occasions in the secrecy of night were intoxicating and fit for beverage, *held* unnecessary, such inference being warranted by attendant circumstances.

**10. Criminal law ⬅779—In conspiracy case, instruction relative to testimony of co-conspirators held adequate.**

In prosecution for conspiracy to violate Tariff and Prohibition Acts, instruction that testimony of alleged coconspirators as to statements made was not to be taken against anybody other than the person making such statements, unless the jury was satisfied that a conspiracy existed at the time, involving the person who made the statement and the person against whom it bore, and that the statement was made on the business of the conspiracy, *held* adequate.

**11. Criminal law ⬤⟞673(2)—Admission of testimony of housekeeper for alleged conspirator, tending to connect another defendant with conspiracy, held not error, viewing instruction.**

In prosecution for conspiracy to violate Tariff and Prohibition Acts, admission of testimony of housekeeper for one of defendants, tending to connect another defendant with the conspiracy, *held* not error, in view of instruction regarding statements of co-conspirators.

**12. Criminal law ⬤⟞673(3)—Testimony that alleged conspirator communicated by telephone with another, admitted to contradict the former, held not prejudicial to latter under instruction.**

In prosecution for conspiracy to violate Tariff and Prohibition Acts, admission of testimony that particular defendant had communicated with another over the telephone for the purpose of contradicting testimony of the former, *held* not prejudicial to the latter, in view of instruction as to statements of co-conspirators.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Patrick A. McDonnell and others were convicted of conspiracy to violate the Tariff and Prohibition Acts, and they bring error. Affirmed.

LaRue Brown, of Boston, Mass. (John P. Feeney, of Boston, Mass., on the brief), for plaintiff in error Patrick A. McDonnell.

John V. Spalding, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The plaintiffs in error, hereinafter for convenience called the defendants, were indicted in the United States District Court for the District of Massachusetts, with 15 others, for conspiring to violate section 593 (a) and (b) of the Act of September 21, 1922, known as the Tariff Act of 1922 (Comp. St. §§ 5841h12, 5841h13), and section 3 of title 2 of the Act of October 28, 1919, entitled the National Prohibition Act (Comp. St. § 10138½aa).

The indictment recites "that it was the purpose and object of said conspiracy, and of the said conspirators and each of them, unlawfully and fraudulently to import and bring into the United States, and assist in importing and bringing into the United States, to wit, into the town of Swampscott, or thereabouts, in said district, certain merchandise, to wit, alcohol, whisky, and other intoxicating liquor, without paying to the United States the lawful customs duties due

the United States on said merchandise, and without having said merchandise invoiced according to law, and to possess, sell, and transport intoxicating liquor containing one-half of 1 per cent. or more of alcohol by volume and fit for beverage purposes, as defined in section 1 of title 2 of the National Prohibition Act (Comp. St. § 10138½), and that said conspiracy continued until the 1st of March, 1925." Several overt acts were then set out.

Some of the respondents pleaded guilty, the jury acquitted others, and found the three defendants who are the plaintiffs in error here guilty.

There was evidence that in 1924 the defendant Robert H. Brown, otherwise known as Harry Brown, resided at No. 38 Melvin avenue, Lynn, Mass.; that upon several occasions several of the respondents named in the indictment met at his home and conferred about landing liquor at Swampscott, in the state of Massachusetts; that the chief of police, William L. Quinn, one of the respondents, was paid money by the said Harry Brown on several occasions to secure protection; that on or about October 28, 1924, certain of the respondents removed 442 bags of whisky, more or less, from a boat and landed the same on the beach at Swampscott, near Little's Point, so called, and removed the same to a house on the Johnston estate, occupied during most of the summer and the fall of 1924 by McDonnell and his family; that this house was used as a place of storage for liquor which was brought in by the respondents, and which was sometimes put in the kitchen or basement and sometimes in a part of the servants' quarters known as the den; that the defendant McDonnell, after he began to occupy the Johnston house, had caused the gardener to tear down a fence to be used in making shutters for this room called the den; that McDonnell was present at the time two loads of liquor were landed from boats and carried to the Johnston house; that when a boat laden with liquor was expected the respondents, among whom at different times were one or more of the three defendants, waited at the den in the Johnston house until notified that the boat was in, and then went down to the beach and assisted in unloading it; that the defendant Brown paid some of the men for this work, and at one time, when he did not have the money necessary to pay them all, McDonnell furnished some; that McDonnell was present on or about October 27th, when some 442 bags or cases of liquor were unloaded, which were transported to the Johnston house, and some of it placed in the coal bin and some

upon the floor of the den under his directions; that upon one occasion in 1924, just before Thanksgiving, about 300 cases were landed, some of which were leaking, and there was a strong odor of alcohol from them; that after they were landed those who assisted in landing the liquor went to the Johnston house and were paid there; that the defendant Siegal met Brown at his residence at 38 Melvin avenue, and talked with him about landing liquor and unloading it at Little's Point, Swampscott, during the months of August, September, and October, and also in the latter part of November or December, 1924; that upon two or three occasions money was paid by Brown to Siegal. [1-3] The first two assignments of error relate to the refusal to direct a verdict for the defendants, on the ground that there was not sufficient evidence to warrant the jury in finding them guilty of the crime charged in the indictment. There was sufficient evidence to warrant the jury in finding that there was a conspiracy, in which all the respondents joined, to transport intoxicating liquor by water either from without or within the United States and after landing the same to transport it to the Johnston house occupied by the defendant McDonnell. That the indictment charges in one count a conspiracy to commit two different offenses against the United States does not make it bad for duplicity. Frohwerk v. United States, 249 U. S. 204, 209, 39 S. Ct. 249, 63 L. Ed. 561, and cases cited. The charge of conspiracy to commit two offenses is a charge of only one offense, namely, conspiracy. It is enough if any overt act in furtherance of the purposes of the conspiracy is alleged and proven. It was not necessary to prove that the liquors landed at the beach in Swampscott were imported or brought into the United States. If they were transported within the territorial limits of the United States, this was a sufficient overt act to sustain the charge of conspiracy alleged in the indictment.

It is true that the penalty that may be imposed under the conspiracy statute is more severe than that imposed under the National Prohibition Act, when one has been found guilty of unlawful possession or transportation of intoxicating liquors as defined in the act, but the Supreme Court has held that it is within the power of Congress to impose a severer punishment in such a case. Clune v. United States, 159 U. S. 590, 595, 16 S. Ct. 125, 40 L. Ed. 269. Conspiracy is the gist of the action, so that, even if the overt acts proven could be said to relate only to the unlawful possession and transportation of intoxicating liquors, the penalty imposed in this case might be greater than could be imposed upon the defendants for these substantive crimes.

[4] By the third assignment of error the defendants raised the question of whether there was one conspiracy, in which all the defendants at different times took part, or several distinct conspiracies. With appropriate instructions this question was left to the jury, who were instructed that it was necessary for them to find that there was a "central continuing conspiracy," extending through the whole series of transactions, to find any of the defendants guilty; that if they should find there was a series of "three or four rum-running conspiracies here, instead of this central one, as I have said to you, the defendants should be acquitted." By their verdict the jury must have found that there was one continuing conspiracy, in which these defendants joined. This was entirely warranted by the evidence which disclosed a general plan of landing intoxicating liquors brought by boat to Little's Point, in Swampscott, and of transporting and storing the same at the Johnston house, so called, in Swampscott, occupied by the defendant McDonnell and his family. There was no error in the court's refusal to give the instruction that there was no evidence that the landing of liquor on different occasions was part of one continuous conspiracy. Belvin et al. v. United States (C. C. A.) 12 F.(2d) 548; United States v. Kissel, 218 U. S. 601, 608, 31 S. Ct. 124, 54 L. Ed. 1168.

[5] In the fourth assignment of error the defendant alleges that the District Court erred in instructing the jury that "it is not necessary that each person in the conspiracy should understand the entire scope of it." This instruction was in accord with the decision of the Supreme Court in Williamson v. United States, 207 U. S. 425, 449, 28 S. Ct. 163, 52 L. Ed. 278; Pierce et al. v. United States, 252 U. S. 239, 243, 40 S. Ct. 205, 64 L. Ed. 542. In explanation of this instruction the court said: "It is enough if a man, understanding that there is a crowd banded together to break the law, knowing in a general way what the purposes of the crowd are in that respect, becomes a member of it and acts with them to a greater or lesser extent."

[6, 7] The fifth assignment of error alleges that the court erred in refusing to instruct the jury, as requested, "that there was no evidence upon which it could find that the defendant Patrick A. McDonnell, on or about October 28, 1924, in Swampscott, possessed 442 bags, more or less, of whisky, in pursuance of any conspiracy to import alcohol,

whisky, or other intoxicating liquor into the United States." There was evidence that on or about October 27, 1924, 442 bags or cases were landed upon the beach near the Johnston house; that McDonnell was present and claimed that there should have been 500 cases; that this liquor was taken to the Johnston house, and by McDonnell's direction the "Scotch" was stored in the coal bin and the "Rye" on the floor; also at this time that McDonnell paid defendant Brown some money, with which Brown paid off the men who had assisted in unloading and transporting the liquor. That the words "Scotch" and "Rye" are used to indicate different kinds of whisky is a matter of common knowledge.

[8] The sixth and seventh assignments of error relate to the court's refusal to instruct the jury "that there was no evidence upon which the jury could find that any merchandise such as is described in the indictment; to wit, alcohol, whisky, or other intoxicating liquor, was imported or brought into the United States," or any agreement made to bring it in. If this request was grounded upon the absence of any evidence that any liquor was imported or brought into the United States, what has been said herein in regard to the first two assignments of error will apply. If it raised the question as to the character of the liquors transported, then what has been said in discussing the fifth assignment is applicable.

[9] Nor was it necessary to prove by direct testimony that the liquors landed upon several occasions in the secrecy of night were intoxicating liquors and fit for beverage purposes, as such were the reasonable inferences to be drawn from all the attendant circumstances. See Remus v. United States (C. C. A.) 291 F. 501, 512; Belvin et al. v. United States (C. C. A.) 12 F.(2d) 548. In this last case there was a demurrer on the ground that the indictment failed to state that the intoxicating liquors which it was alleged that the defendants had conspired to transport, sell, and deal in, contrary to the provisions of the Act of October 28, 1919 (Comp. St. § 10138¼ et seq.) were "fit, sold, and transported, or possessed, for beverage purposes," and it was there held that it was not necessary to allege that the intoxicating liquors were fit, sold, transported, or possessed "for beverage purposes" to describe an offense against the National Prohibition Act. Massey v. United States (C. C. A. 8th) 281 F. 293; Strada v. United States (C. C. A. 9th) 281 F. 143; United States v. Jones (D. C.) 298 F. 131; United States v. McGuire (D. C.) 300 F. 98. "And, even if this were not true, it is well settled that an indictment for conspiracy to commit an offense need not describe the offense which is the object of the conspiracy with the same certainty as would be required in an indictment for that offense."

[10] The eighth, ninth, and tenth assignments of error relate to the testimony of co-conspirators and statements made by them. Upon this we think the jury were adequately and properly instructed, as follows: "At various points in the government's case, witnesses called by the government testified to statements made by this, that, or the other, defendant about other defendants, or about the alleged conspiracy. I have already told you that those statements are not to be taken against anybody other than the person making them, unless you are satisfied that there was a conspiracy existing at the time of the statement, involving the person who made it and the person against whom it bore, and that the statement was made upon the business of that conspiracy."

[11] Gertrude L. Dodge, the housekeeper at No. 38 Melvin avenue, testified in regard to statements made by one of the defendants, Harry Brown, during August, September, October, November, and into December, 1924, in which he admitted that he was paying Chief of Police Quinn money for being allowed to land liquor in Swampscott. She testified that she saw in October or November in this house a man whom she was told by Harry Brown was McDonnell; that Brown told her that McDonnell wanted him to land some liquor for him. She also testified, under objection, as to the methods employed in landing liquor as described to her by Brown. In regard to her statement the jury were instructed as follows: "Turning now to McDonnell, who is on trial here as one of the conspirators, there is no evidence which brings McDonnell into the conspiracy until some time in October. If you will think back—and I have been refreshing my recollection by my notes—nobody testifies to any fact which brings McDonnell into any conspiracy prior, I repeat, to October. So that, there being no evidence that McDonnell was a member of any conspiracy prior to that time, you should not regard as against him any of the statements made when he was not present, before that date some time in October, when the evidence for the first time places McDonnell as a participant in any conspiracy to smuggle or import or transport liquor. Now that would require you, in considering the guilt of McDonnell, to disregard all the evidence as to the statements

and talk and payments of money, practically all the evidence, during the summer and early part of the fall (September, that is) which was given to you by Mrs. Hanna, or Mrs. Dodge, as she now is, by Miss Matheson, by Mrs. Morgan, and by the other people who testified to statements and facts occurring during the summer of 1924 and before the time in October when McDonnell, according to the government evidence, first became a member of the conspiracy." Under this instruction in regard to the statements of co-conspirators, we think there was no error in admitting in evidence the statement of the witness Gertrude L. Dodge.

[12] The other assignments of error relate to the admission of evidence, over the objection and subject to the exception of the defendant McDonnell, of testimony and exhibits alleged to show that the defendant Quinn communicated with the defendant McDonnell over the telephone. This testimony was admitted solely for the purpose of contradicting the defendant Quinn, who had testified that he never had any communication over the telephone with McDonnell and it was competent for this purpose. If it had any probative force to connect McDonnell with the conspiracy, it is to be presumed that the jury obeyed the instruction given, and used it only for. the purpose for which the court ruled it could be admitted.

The judgment of the District Court is affirmed.