## FREEDMAN v. UNITED STATES.
### No. 2735.

Circuit Court of Appeals, First Circuit.
April 20, 1933.

BINGHAM, Circuit Judge, dissenting.

---

Daniel A. Shea, of Boston, Mass. (Sydney Rosenthal, of Long Island City, N. Y., on the brief), for appellant.

William J. Walsh, Interstate Commerce Commission, of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and John J. Walsh, Jr., Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

The defendant and eight others were indicted for a conspiracy to violate section 10 (3) of the Interstate Commerce Act, 49 USCA § 10 (3), by obtaining transportation in interstate commerce of carloads of grapes at less than the established rates by means of false and fraudulent claims for damage to the goods while in transit. It was alleged that the conspiracy was made in New York on August 15, 1930, and continued until the indictment, and that it extended into the District of Massachusetts. Three overt acts were alleged; the first two were ruled out by the trial judge and have become immaterial; the other was that the defendant, Freedman, on or about June 25, 1931, in furtherance of the conspiracy, consulted with officials of the New York, New Haven & Hartford Railroad Company at Boston. The jury convicted Freedman, and he has appealed.

The first question is whether the indictment alleges an offense under the statute above referred to. Section 10 comprises four subsections, each of considerable length. The general purpose of the section as a whole is to penalize, on the one hand, the granting of favors or rebates by the railroad and the obtaining or acceptance of them by the shipper, under whatever form or guise such unlawful action may take; and, on the other hand, to protect the carriers against frauds perpetrated on them by misrepresentation as to the character, amount, weight, etc., of the goods transported, or by fraudulent claims for damages. Subsection 3, for conspiracy to violate which the defendant was indicted, relates to the latter aspect of the statute. It makes criminal attempts to cheat the carrier by false billing, classification, weights, or contents, and by false and fraudulent damage claims. United States v. Union Mfg. Co., 240 U. S. 605, 36 S. Ct. 420, 60 L. Ed. 822.

It is contended for the defendant in an addenda to his brief that the two clauses of this subsection denounce different crimes, and that the present indictment is not good under either. No exception or assignment of error raises this issue, and the case was tried on the theory that the means employed in obtaining transportation at less than the established rates were those described in the second clause of paragraph (3). The court so instructed the jury, and no exception was taken to this part of his charge. It is well settled that the allegations respecting the purpose of a conspiracy need only be sufficient to show that it was of criminal character, and to describe it with sufficient certainty so that the record will bar a second prosecution for the same offense. Frohwerk v. United States, 249 U. S. 204, 209, 39 S. Ct. 249, 63 L. Ed. 561; Hogan v. United States, 48 F. (2d) 516 (C. C. A. 5); McDonnell v. United States, 19 F.(2d) 801 (C. C. A. 1); Wong Tai v. United States, 273 U. S. 77, 81, 47 S. Ct. 300, 71 L. Ed. 545. The purpose of the conspiracy charged, as stated in the indictment, was "wilfully and knowingly to obtain transportation in interstate commerce by railroad of numerous carloads of grapes at less than the lawful transportation rates by means of false damage claims," etc. Such a conspiracy is clearly criminal under the statute; and it is unnecessary to decide whether, as a matter of strict criminal pleading, subsection 3 creates two independent crimes, or, as we incline to think, a single crime which may be committed in various ways.

The next question is whether the evidence warranted a conviction. It is raised by the defendant's exception to the refusal of the trial judge to direct a verdict of not guilty. The government's evidence showed that the defendant Freedman corrupted the defendant Gordon, a freight agent of the New York, New Haven & Hartford Railroad at West Farms, N. Y., by arranging with Gordon that he should make false notations of damage in transit, on carloads of grapes which would be shipped to West Farms on the procurement of Freedman, and that Freedman would pay him 10 per cent. of the amount for which the damage claims based on such notations were adjusted. Following this agreement, there was an enormous increase in the number of carloads of grapes shipped to West Farms station during the fall of 1930. Full freight was paid on them when they arrived. Gordon made false notations of damage; and Freedman undertook to collect on the false claims against the New York, New Haven & Hartford Railroad

Company. In connection with that effort he came to Boston in June, 1931, to confer with the railroad officials—the conduct which is alleged as an overt act in the indictment.

There is no direct testimony that the conspiring parties regarded the expected receipts from false damage claims as reductions on transportation charges, but—on the evidence —they certainly made false claims for damages. Moreover, the jury might well believe that cars controlled by the conspirators were consigned to West Farms, out of the ordinary course of business, in order to obtain an advantage through false damage claims which would cut down the net transportation cost and thereby make it advantageous to do business in that way. We think the trial judge was right in submitting the case to the jury.

It is earnestly contended for the defendant that the single overt act above referred to, proof of which was essential to the conviction, could not be considered, because it took place after the transportation had been fully completed and the charges for it paid, and after the conspiracy was terminated. This is an erroneous view of the matter. The purpose of the conspiracy was by no means complete when the grapes were delivered and the freight was paid. The vital part of it, the presentation and collection of false damage claims, was still to come. It was in furtherance of that very object that Freedman came to Boston.

The other exceptions have been examined and considered. They seem to us clearly unfounded and not to require discussion. The case was submited to the jury under a charge which was unusually full, fair, and able.

The judgment of the District Court is affirmed.

BINGHAM, Circuit Judge (dissenting).

Louis Freedman, the appellant, was indicted in the federal District Court for Massachusetts with having, on or about the 15th day of August, 1930, in the Southern District of New York, willfully, unlawfully, and feloniously conspired with some eight other persons "to commit an offense against the United States of America, that is to say, the offense denounced by section 10 of the Act of Congress known as the Interstate Commerce Act (U. S. Code, title 49, § 10 [49 USCA § 10]), in that it was the purpose and object of said conspiracy and of the said conspirators and each of them, wilfully and knowingly to obtain transportation in interstate commerce, by railroad, of numerous carloads of grapes at less than the lawful trans-

portation rates, by means of false damage claims."

Three overt acts were alleged in the indictment, but the only one proved and relied upon is the third, to the effect that "the said defendant Louis Freedman on or about the twenty-fifth day of June in the year nineteen hundred and thirty-one, at Boston in the District of Massachusetts, consulted with officials of the said New York, New Haven & Hartford Railroad Company."

The first question to be considered is whether section 10 of the act of Congress above specified defines two distinct offenses, and, if it does, which one of the offenses there denounced was it, according to the allegations of the indictment, "the purpose and object of said conspiracy and of said conspirators and each of them" to perpetrate. The indictment states that the object of the conspiracy was to obtain transportation in interstate commerce, by railroad, of numerous carloads of grapes at less than the lawful transportation rates, and that this object was to be accomplished "by means of false damage claims."

The substantive offense charged as the object of the conspiracy, if to be found in section 10, must be found in paragraph (3) of that section. Paragraph (3) contains two clauses. The first clause ends with the words, "and in force on the line of transportation." At that point the second clause begins. The first part of the first clause ending with the words, "any such carrier shall transport property," is unquestionably attributable to and forms a part of both clauses. The last part of clause 2, beginning with the words, "shall be guilty of fraud," is likewise attributable to and forms a part of both clauses, and, when so considered, the first clause of paragraph (3) reads as follows:

"Any person, corporation, or company, or any agent or officer thereof, who shall deliver property for transportation to any common carrier subject to the provisions of this chapter, or for whom as consignor or consignee, any such carrier shall transport property, who shall knowingly and wilfully, directly or indirectly, himself or by employee, agent, officer, or otherwise, by false billing, false classification, false statement, or by any other device or means, whether with or without the consent or connivance of the carrier, its agent, or officer, obtain or attempt to obtain transportation for such property at less than the regular rates then established and in force on the line of transportation * * * shall be guilty of fraud, which is declared to be a misdemeanor, and shall, upon conviction

thereof in any court of the United States of competent jurisdiction within the district in which such offense was wholly or in part committed, be subject for each offense to a fine of not exceeding $5,000 or imprisonment in the penitentiary for a term of not exceeding two years, or both, in the discretion of the court."

And the second clause, when so considered, reads:

"Any person, corporation, or company, or any agent or officer thereof, who shall deliver property for transportation to any common carrier subject to the provisions of this chapter, or for whom, as consignor or consignee, any such carrier shall transport property, * * * who shall knowingly and wilfully, directly or indirectly, himself or by employee, agent, officer, or otherwise, by false statement or representation as to cost, value, nature, or extent of injury, or by the use of any false bill, bill of lading, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to be false, fictitious, or fraudulent, or to contain any false, fictitious, or fraudulent statement or entry, obtain or attempt to obtain any allowance, refund, or payment for damage or otherwise in connection with or growing out of the transportation of or agreement to transport such property, whether with or without the consent or connivance of the carrier, whereby the compensation of such carrier for such transportation, either before or after payment, shall in fact be made less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud, which is declared to be a misdemeanor, and shall, upon conviction thereof in any court of the United States of competent jurisdiction within the district in which such offense was wholly or in part committed, be subject for each offense to a fine of not exceeding $5,000 or imprisonment in the penitentiary for a term of not exceeding two years, or both, in the discretion of the court."

When paragraph (3) is so read and considered, and it can reasonably be read in no other way, clause 1 makes it a crime for one to "obtain or attempt to obtain transportation for such property at less than the regular rates then established and in force on the line of transportation," if he does so, "by false billing, false classification, false weighing, false representation of the contents of the package or the substance of the property, false report of weight, false statement, or by any other device or means," with knowledge of the falsity. And clause 2 makes it a crime for one to "obtain or attempt to obtain any al-

lowance, refund, or payment for damage or otherwise * * * whereby the compensation of such carrier for such transportation * * * shall in fact be made less than the regular rates then established and in force on the line of transportation," if he obtains, or attempts to obtain, such allowance, refund, or payment for damage "by false statement or representation as to cost, value, nature, or extent of injury, or by the use of any false bill, bill of lading, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to be false, fictitious, or fraudulent."

It is apparent, therefore, that clause 1 denounces as a crime the obtaining or attempting to obtain, transportation of property at less than the regular rates then established and in force on the line of transportation by any of the false and fraudulent means specified in clause 1, or a like false and fraudulent device or means; and that the crime denounced in the second clause is the obtaining, or attempting to obtain, an allowance, refund, or payment for damage by any of the false and fraudulent representations or means specified in the second clause.

In this situation the question arises whether, under the allegations of the indictment, the substantive offense, the object of the conspiracy, is the substantive offense denounced by clause 1 or the substantive offense denounced by clause 2.

The appellant, Freedman, contends that, according to the allegations of the indictment, the substantive offense alleged as the object of the conspiracy is the offense denounced by clause 1, if any offense is alleged in the indictment, though imperfectly; that at the trial the District Court ruled otherwise and treated the allegations of the indictment as though the substantive offense, the object of the conspiracy, was the offense denounced by clause 2. He further contends that the evidence of the government, if it tended to support any charge against the defendant, tended to show that the object of the conspiracy of which he was tried and found guilty was, if anything, a conspiracy to commit the offense denounced by clause 2, while the indictment was for conspiracy to commit the offense denounced by clause 1, and that what took place at the trial is not different than it would have been if he had been set to trial without an indictment, had been tried for conspiracy to commit the offense denounced by clause 2, and had been found guilty and sentenced accordingly.

It seems to me that these contentions should be sustained. It is certain that the indictment alleges that the "object of said conspiracy and of the conspirators and each of them [was] wilfully and knowingly to obtain transportation in interstate commerce, by railroad, of numerous carloads of grapes at less than the lawful transportation rates." It is fairly certain that, from a reading of this indictment, the defendant would not know, and could not be called upon to know, that the object of the conspiracy with which he was charged was "to obtain or attempt to obtain any allowance, refund, or payment for damage." While it is not necessary that an indictment for conspiracy shall state the elements of the substantive offense, the object of the conspiracy, with such nicety and precision as an indictment charging the substantive offense only, nevertheless it must set out the substantive offense with reasonable certainty so that the defendant may know what he has to defend against and especially with such certainty that the judgment of conviction thereon may be pleaded and will constitute a bar to a second prosecution for the same offense. Can it be fairly said that the defendant, having been sentenced under the allegations of this indictment for conspiring to obtain transportation at less than the lawful rates, if later indicted and charged with having conspired to violate clause 2, could plead conviction under clause 2 with any confidence that his plea would be sustained? I think not, if the indictment must be looked to to disclose the crime for which he was previously tried and convicted; and it is to the indictment we must look to determine the crime of which he was previously tried and convicted. All the judgment shows is that the defendant was sentenced to pay a fine of $5,000 and to be imprisoned for a term of a year and six months. The judgment surely does not show that he was tried and convicted of a conspiracy to commit the offense denounced by clause 2, which was the fact.

It cannot be questioned but that he was tried and convicted of a conspiracy to commit the offense denounced by clause 2. On page 91 of the record, the District Court, while charging the jury, in undertaking to state the substance of the statute under which the trial was had, stated it in these terms:

"Any person, corporation, or company, or any agent or officer thereof, who shall obtain any allowance, refund or payment for damages or otherwise in connection with or growing out of the transportation of or any agreement to transport such property, whether

with or without the consent or connivance of the carrier, whereby the compensation of that carrier for such transportation either before or after payment shall in fact be made less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud."

This and other portions of the charge put it beyond question that the substantive offense, the object of the conspiracy for which the defendant was put on trial and tried, was the offense denounced by clause two of paragraph (3), a distinct offense from that charged as the object of the conspiracy in the indictment.

If the proof had been of a kind to establish a conspiracy, the purpose and intent of which was to obtain transportation at less than the legal rate under clause 1, the charge in the indictment being a conspiracy to effect that object, though inadequately stated, then I think after verdict the defendant could not complain that the indictment was inadequate. In such case he should have demurred to the indictment in order to raise the question. But that is not the case here; there was no such proof. The situation is not different from what it would be had there been no indictment and the defendant had been set to trial and convicted of a conspiracy to violate clause 2.

The appellant has raised these questions in two different ways—one by a motion for a directed verdict at the close of all the evidence on the ground, as stated in the motion, "that the allegations of the indictment have not been sustained, that the evidence as adduced by the government has shown a set of circumstances which did not constitute a violation of law as charged." They are also raised by the first, seventeenth, eighteenth, and nineteenth requests for rulings. The motion and requests were denied subject to exception. The third assignment of error is based upon the refusal of the court to direct a verdict as requested. The seventh and thirteenth assignments are based on the court's refusal to give the requests. Having raised the questions here considered by a motion for a directed verdict and by requests for rulings, it was not necessary for the defendant, in order to preserve his rights, to except to the ruling of the court that the indictment was under clause 2 of paragraph (3). Having saved his rights in two ways, he cannot be precluded from having them considered because he did not adopt a third way, which seems to be the view expressed in the majority opinion.