Arthur Braun, J.
The corporate and individual defendants, Trans-American Freight Lines, Inc., and Ralph Carbone, are charged with the violation of subdivision 3 of section 380 of the Vehicle and Traffic Law to wit: “ 3. It shall be unlawful to transport by motor vehicle over the highways within this state any dangerous article without conspicuously marking or placarding any motor vehicle engaged in such transportation on each side and on the rear thereof with the word ‘ dangerous ’ or the common or generic name of the substance transported or its principal hazard; provided, that the commissioner of motor vehicles may, by regulation issued after a public hearing, prescribe with respect to any specific dangerous article the minimum quantities below which no placard shall be required. ’ ’
15 NYCRR 67.6 (a) (1) provides that the motor vehicle need not be marked or placarded if it contains less than 2,500 pounds of dangerous articles as set forth in subdivision 3 of section 380. *763 The defendants are charged with transporting 15 drums of ethylene oxide weighing 10,038 pounds.
The vehicle involved herein was a tractor and trailer operated by the individual defendant and bore on it the name of the corporate defendant. It was stopped at the entrance to the Holland Tunnel on the New York side after the toll was paid, by an officer of the Port of New York Authority assigned to check trucks for dangerous commodities at that site.
The evidence consisted of a bill of lading containing the name of the corporate defendant as well as the name of the shipper, a Kentucky company, and that of the consignee in New Jersey. It stated that 15 drums of ethylene oxide weighing 10,038 pounds were being transported. Also introduced were a facsimile of the red labels required for flammable liquids by the I. C. C., and a tag removed from one of the drums stating in part ‘ ‘ Ethylene Oxide * * * active ingredients 99%+ * * * Danger: Extremely flammable. Breathing of vapor harmful ” etc., a photograph purporting to show several of the drums in the trailer, and three photographs showing the corporate defendant’s name on three sides of the trailer.
Testimony by the chief of chemical testing for the Port Authority, Norman Liebsman, was to the effect that ethylene oxide was a flammable liquid within the statutory prohibition as set forth in section 380 “ which gives off flammable vapors (as determined by flash point from Tagliabue’s open cup tester * * *) at
or below a temperature of eighty degrees fahrenheit.”
The testimony indicated that neither a marking nor placarding appeared on each side and the rear of the motor vehicle with the word “ dangerous ”, nor was the name of the substance transported or its principal hazard marked thereon as required by the statute.
The defendants rested after the motion on the prima facie case was denied. The defendants put at issue, in the main, the following points:
(1) That proof of criminal intent is required for a conviction under subdivision 3 of section 380.
(2) That if subdivision 3 of section 380 is interpreted as not to require a criminal intent it should be held unconstitutional as an inconsistent invasion of a sphere pre-empted by the Federal Government in which a similar regulation (H. S. Code, tit 18, § 834, subd. [f]) states in part: ‘6 Whoever knowingly violates any such regulation shall be fined ” etc.
(3) That there was no evidence that the Tagliabue’s open cup tester was used to determine the flash point as set forth in the statute.
*764 In People v. Hartford Trmsp. Co. (6 Misc 2d 562 [1957]) Judge Malbín in describing the legislative history of the statute found (p. 565) that the 1 ‘ legislation was enacted as a direct result of the Holland Tunnel fire in 1949, the express purpose being to prevent the hazard that arises from the undisclosed presence on public highways of dangerous articles.” In commenting on St. Jolvnsbury Trucking Go. v. United States (220 F. 2d 393), relied on by the defendants herein, Judge Malbin quoted from the concurring opinion wherein the intent to violate or willfully fail to take reasonable steps to avoid violation was considered essential for conviction under the I. O. G. regulations. It was pointed out however, at page 398, “If it be thought that the indicated requirement of proof [criminal intent] will seriously hamper effective enforcement of the Interstate Commerce Commission regulations, the answer is that Congress is at liberty to fix that up by striking out * * * mens rea — ■ ‘ knowingly ’ — as applied to violation of regulations of the sort here involved. That is to .say that Congress could convert the offense into * * * a ‘ public welfare offense ’, requiring no element of guilty knowledge or other specific mens rea ”.
Section 380 of the New York State law seemed to follow that recommendation by eliminating the prescribed element of onens rea and created thereby a “ public welfare offense ”.
It is argued by the defendants that despite the elimination of the word “ knowingly ” in the New York statute it was intended by the Legislature to enact legislation substantially identical with the Federal provisions. The defendants furnished a copy of a letter sent to Governor Dewey recommending the enactment of the new regulation ‘1 generally identical with the Interstate Commerce Commission regulations ”. The fact that the elimination of the matter of intent was not alluded to in that correspondence cannot be conclusive as to the intent of the Legislature. Certainly much more cogent proof of such intent would be necessary. The fact is that section 380 was ‘ ‘ generally identical ’ ’ to the I. C. C. regulations.
We come now to the question of whether or not subdivision 3 of section 380 is unconstitutional because it- is inconsistent or contrary to the Federal regulations and thereby an invasion of a sphere pre-empted by the Federal Government. We see no conflict between State and Federal regulations. The regulations are practically identical in substance. In fact subdivision 4 of section 380 of the Vehicle and Traffic Law states in part that ‘ ‘ nothing in this section contained shall apply to * * * transportation of any dangerous article by highway when packed, *765 marked, labeled or accompanied by shipping papers in conformity with the applicable regulations of the Interstate Commerce Commission and placarded in conformity with the provisions of subdivision three of this section ”.
Section 77.823 of title 49 of the Code of Federal Regulations also provided that a motor vehicle transporting 2,500 or more pounds of flammable liquids shall be suitably marked or placarded on each side and rear.
Had there been compliance with the I. C. C. regulation there could be no violation of the State regulation.
Exclusive occupation of a sphere of regulation is not to be implied unless the act of Congress is in actual conflict with law of the State. (Huron Cement Co. v. Detroit, 362 U. S. 440, 443.)
In Huron it was stated by the court: “ in determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when s conferring upon Congress the regulation of commerce, . . . never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. ’ ’ (p. 443).
In California v. Zoolo (336 U. S. 725 [1949]) the defendants contended that in part that State’s laws ‘ ‘ ‘ aiding5 enforcement are invalid ” (p. 729).
The court stated that: £ ‘ if the claim is conflict in terms, it ‘ must be clear that the federal provisions are inconsistent with those of the state to justify the thwarting of state regulations.’ ” (p. 733). The court concluded by stating: “ the State may punish as it has in the present case for the safety and welfare of its inhabitants; the nation may punish for the safety and welfare of interstate commerce. There is no conflict.” (p. 738).
Where violation of the statute (Vehicle and Traffic Law, § 380, subd. 3) was charged and a prima facie case made and the defendants then rested without affirmatively challenging the evidence adduced at the triad, it is reasonable to assume that the 15 drums being transported contained ethylene oxide as clearly marked by a tag attached to each drum and in addition that each drum had affixed to it I. C. C. red labels specified for flammable liquids. The copy of the bill of lading and the markings on the trailer clearly implicated this corporate defendant as well as attesting to the presence of ethylene oxide. The fact that, although given the opportunity, the defendants came forward with no proof of any kind to challenge the evidence *766 offered by the People it became unnecessary that the Tagliabue test be made of the contents of the articles transported. The chemist testified however, that ethylene oxide came within the definition of flammable articles prohibited for transportation by the statute in weights in excess of 2,500 pounds.
As to whether or not these defendants were guilty beyond a reasonable doubt despite the lack of an actual test of the flammable articles, I believe is best illustrated by the recent (1960) case of People v. Leonard (8 N Y 2d 60). Although it involved an alcoholic beverage sale to a minor the question of direct proof of the contents of the drink sold was an issue.
At page 62 the court stated: ‘ ‘ The courts have noted as a matter of common knowledge that drinks of certain names and descriptions are alcoholic beverages within the meaning of regulatory statutes (McDonnell v. United States, 19 F. 2d 801, 804, cert, denied 275 IT. S. 551 * * * ). * * * The same test is to be applied as in any criminal case, i. e., whether the evidence 1 points logically to defendant’s guilt and excludes, to a moral certainty, every other reasonable hypothesis ’ (People v. Harris, 306 N. Y. 345, 351 * * * ). There is no well-considered authority to sustain the determination of the court below to the effect that the crime charged may be proven only by direct evidence as' to the nature of the beverage sold. * * *
Nevertheless, since intent is not a necessary ingredient of this crime, he is responsible for the act of his employees (People v. Hawk, 156 Mise. 870, affd. 268 N. Y. 678 * * * ).”
I find both defendants guilty beyond a reasonable doubt.